No. 23-11913

In the

# United States Court of Appeals
## for the Eleventh Circuit

Georgia Second Amendment, Inc.,
*Appellants*,

v.

Governor of Georgia, et al.,
*Appellees*.

On Appeal from the United States District Court for the
Northern District of Georgia, Gainesville Division.
No. 2:23-cv-24 — Richard W. Story, *Judge*

## BRIEF OF APPELLEE GOVERNOR BRIAN KEMP

Christopher M. Carr
  *Attorney General of Georgia*
Beth Burton
  *Deputy Attorney General*
Tina M. Piper
  *Senior Asst. Attorney General*
Deborah Nolan Gore
  *Senior Asst. Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3289
dgore@law.ga.gov
*Counsel for Appellee Governor
Brian Kemp*

Georgia Second Amendment, Inc., et al. v. Gov. of Georgia, et al.
No. 23-11913

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Burton, Beth, Deputy Attorney General, Counsel for Defendant/Appellee Brian Kemp

Carr, Christopher M., Attorney General, Counsel for Defendant/Appellee Brian Kemp

Chastain, Hon. Michael, Judge of the Probate Court of Lumpkin County, Georgia, Defendant/Appellee

Georgia Second Amendment, Inc., Plaintiff/Appellant

Gore, Deborah Nolan, Senior Assistant Attorney General, Counsel for Defendant/Appellee Brian Kemp

Kemp, Hon. Brian, Governor of the State of Georgia, Defendant/Appellee

Monroe, John, Counsel for Plaintiffs/Appellants

Piper, Tina, Senior Assistant Attorney General, Counsel for Defendant/Appellee Brian Kemp

Stephens, Thomas, Plaintiff/Appellant

Story, Hon. Richard W., Senior United States District Judge

Waymire, Jason C., Counsel for Defendant/Appellee Michael Chastain

Williams & Waymire, LLC, Counsel for Defendant/Appellee Michael Chastain

Georgia Second Amendment, Inc., et al. v. Gov. of Georgia, et al.
No. 23-11913

I am not aware that any publicly traded company or

corporation has an interest in the outcome of this case or appeal.


/s/ *Deborah Nolan Gore*
Deborah Nolan Gore

## STATEMENT REGARDING ORAL ARGUMENT

Governor Brian Kemp does not request oral argument in this case. The facts and legal arguments are adequately presented in the briefs and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ................................................ i

Table of Authorities ........................................................... iii

Statement of Issues ........................................................... 1

Introduction ................................................................. 2

Statement of the Case ........................................................ 4

    A. Factual Background ..................................................... 5

        1. Relevant Statutory Framework .................................... 5

        2. Plaintiffs' Allegations and Claims ............................. 6

    B. Proceedings Below ..................................................... 8

    C. Standard of Review .................................................... 9

Summary of Argument .......................................................... 10

Argument ..................................................................... 11

    I. The district court correctly dismissed Plaintiffs' Second Amendment claim because Georgia's age-based restriction on public carry is constitutional. ......................................... 11

    II. The district court did not err in refusing to grant Plaintiffs' request for preliminary injunctive relief. ........................... 22

Conclusion ................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
  605 F.3d 1283 (11th Cir. 2010) .................................................. 9

*Brown v. Entm't Merchs. Ass'n*,
  564 U.S. 786 (2011) (Thomas, J., dissenting) .......................... 20

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ..........................................................*passim*

*GeorgiaCarry.Org, Inc. v. Georgia*,
  687 F.3d 1244 (11th Cir. 2012) ................................................ 12

*Horsley v. Trame*,
  808 F.3d 1126 (7th Cir. 2015) .............................................14, 20

*Maryland v. King*,
  567 U.S. 1301 (2012) (Roberts, C.J., in chambers).................. 24

*McIntyre v. Ohio Elections Commission*,
  514 U.S. 334 (1995) (Scalia, J., dissenting) ............................. 19

*Nat'l Rifle Ass'n. v. Bureau of Alcohol, Tobacco,*
  *Firearms and Explosives*,
  700 F.3d 185 (5th Cir. 2012), *abrogated on other*
  *grounds* .................................................................................15, 20

*New York State Rifle & Pistol Association, Inc. v.*
  *Bruen*,
  142 S. Ct. 2111 (2022) ......................................................*passim*

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................. 24

iii

*Northeastern Florida Chapter of Ass'n of General*
    *Contractors v. Jacksonville*,
    896 F.2d 1283 (11th Cir. 1990) ................................................. 23

*NRA v. Bondi*,
    21-12314, Doc. 88 (En Banc Briefing Notice, issued
    July 21, 2023) ....................................................................4, 8, 9

*Saltonstall v. Riley*,
    28 Ala. 164 (1856) .................................................................... 14

*Swain v. Junior*,
    961 F.3d 1276 (11th Cir. 2020) ...........................................10, 22

*United States v. Rahimi*,
    No. 22-915 ................................................................................... 9

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ................................................... 19

*Vital Pharms., Inc. v. Alfieri*,
    23 F.4th 1282 (11th Cir. 2022).................................................. 1

*Wreal, LLC v. Amazon.com*,
    840 F.3d 1244 (11th Cir. 2016) ...........................................22, 23

**Statutes**

42 U.S.C. § 1983 ......................................................................... 4, 7

42 U.S.C. § 1988 ............................................................................. 8

1856 Ala. Acts 17, No. 26, § 1 ....................................................... 14

1881 Del. Laws 987, ch. 548, § 1 ................................................... 15

1876 Ga. Laws 112, No. CXXVIII .............................................15, 16

1881 Ill. Laws 73, § 2 .................................................................... 15

1884 Iowa Acts .............................................................................. 15

iv

1883 Kan. Sess. Laws 159, ch. CV, 1-2 .....................................15, 16

1859 Ky. Acts 245, § 32................................................................ 14

1890 La. Acts 39, No. 46, § 1 ........................................................ 15

1882 Md. Laws 656, ch. 424, § 2.................................................... 15

1878 Miss. Laws 175, ch. 66, §§ 1-2 .............................................. 15

1895 Neb. Laws 237-38................................................................. 16

Laws of Nebraska Relating to the City of Lincoln, Art. XXVI, §§ 2, 5................................................................. 16

Nev. Stat. 51 § 1......................................................................... 17

O.C.G.A. §§ 16-11-34.1(b) ............................................................. 2

O.C.G.A. § 16-11-125.1(2.1) ........................................................... 5

O.C.G. A. § 16-11-126 ...........................................................*passim*

O.C.G.A. §§ 16-11-127(b)(2) ........................................................... 2

O.C.G.A. §§ 16-11-129.............................................................*passim*

O.C.G.A. § 16-11-138 .................................................................. 16

1897 Tex. Gen. Laws 221-22, ch. 155, § 1 ..................................... 16

1882 W. Va. Acts 421-22, ch. 135, § 1............................................ 15

1883 Wis. Sess. Laws 290, ch. 329, §§ 1-2................................15, 16

1890 Wyo. Sess. Laws 140, § 97 .................................................... 16

## Other Authorities

U.S. Const. amend. II ............................................................*passim*

U.S. Const. amend. XVI................................................10, 11, 15, 19

Bill of Rights ................................................................... 10

Fed. R. App. Proc. Rule 32(a)(7)(B) .................................. 1

*First Session of the Fifty-Second Congress 1891-92*, § 5
    (1892) ......................................................................... 16

Vivian E. Hamilton, *Adulthood in Law and Culture*, 91
    Tul. L. Rev. 55, 64 (2016) ........................................... 14

## STATEMENT OF ISSUES

1.    States may, in keeping with "the right of the people to keep and bear Arms" guaranteed by the Second Amendment, impose regulations that are "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 (2022). Georgia law permits individuals 18 and older to own and possess handguns and to carry a handgun in a number of locations, but it precludes most 18-to-20-year-olds from lawfully carrying a handgun in public places. *See generally* O.C.G.A. §§ 16-11-126, 16-11-129. The question is whether Georgia's restriction on public carry by 18-to-20-year-olds—who were considered "minors" and "infants" under the law in the Founding and Reconstruction Eras and lacked the same rights as adults, including the right to vote—is analogous to America's historical tradition of firearm regulation?

2.    To obtain the extraordinary relief of a preliminary injunction, the moving party must clearly establish a substantial likelihood of success on the merits, that an injunction is necessary to prevent irreparable harm, and that the balance of equities favors an injunction. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022). Did the district court abuse its discretion

when it held that Plaintiffs failed to show they were likely to succeed on the merits of their Second Amendment challenge to Georgia's age restriction on carrying a firearm in public and, accordingly, denied their request for a preliminary injunction?

## INTRODUCTION

It is undeniable that Georgia and its public officials support the rights of gun-owners. By any measure, in Georgia it is easy to buy, sell, own, and carry firearms for all lawful purposes. As enacted by the Georgia legislature, Georgia law goes far beyond a simple "individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), with law-abiding adults facing very few restrictions on how they can purchase and carry weapons. Nevertheless, in Georgia, as in every other state, the broad rights to gun-ownership and gun use are not *completely* boundless. And that makes sense, because "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. Felons, for instance, cannot carry firearms. *See* O.C.G.A. § 16-11-129(b)(2)(B). And firearms are generally prohibited in courtrooms and the Capitol. *See* O.C.G.A. §§ 16-11-34.1(b), 16-11-127(b)(2).

At issue here is Georgia's statutory regulation of firearm usage by 18-to-20-year-olds. Georgia law permits individuals 18

and older to own and possess handguns and to carry a handgun on their property or inside their home, motor vehicle, or place of business, or while hunting, fishing, or sport shooting. The minimum age to obtain a weapons carry license, however, is set by the Georgia legislature at 21 for individuals who have not served in the armed forces. And either a license or eligibility to obtain one is required to lawfully carry a handgun in public. *See generally* O.C.G.A. §§ 16-11-126, 16-11-129. So, while 18-to-20-year-olds can carry firearms in many places, they cannot carry a handgun in public places, as a general matter.

Plaintiffs filed suit challenging this restriction and seeking to temporarily and permanently enjoin it. The district court dismissed the suit and denied Plaintiffs' request for preliminary injunctive relief, holding that Georgia's minimum age requirement to carry a firearm in public is consistent with historical tradition and not contrary to the Second Amendment. Plaintiffs challenge this holding on appeal, arguing that reversal is warranted because the district court relied on the rationale set forth by a panel of this Court in *National Rifle Ass'n v. Bondi*, which was later vacated in light of this Court's grant of rehearing en banc. *See* 61 F.4th 1317 (11th Cir. 2023), *reh'g en banc granted, vacated by* 2023 U.S. App. LEXIS 17960 (11th Cir. July 14, 2023). At most, that argument

supports the notion that this Court should stay this case pending the outcome of the *en banc* proceeding in *Bondi*. But in any event, *Bondi* was not reversed, and its reasoning is still persuasive here. Because reasonable age-based firearms regulations such as Georgia's are consistent with the text and history of the Second Amendment, they pass constitutional muster. The district court reached the correct conclusion, and this Court should affirm.

## STATEMENT OF THE CASE

Plaintiffs (a gun rights organization with members between the ages of 18 and 20 who wish to carry a loaded handgun in public and Thomas Stevens, one such member) brought suit under 42 U.S.C. § 1983 against Governor Brian Kemp and Judge Michael Chastain of the Lumpkin County Probate Court. Doc. 1. Their sole claim is a Second Amendment challenge to Georgia's statutory scheme that generally requires individuals who have not served in the armed forces to be at least 21 years of age to lawfully carry a firearm in public. *Id.* The district court granted motions to dismiss brought by Governor Kemp and Judge Chastain, holding that the challenged restriction is consistent with the Second Amendment. Doc. 23. And the court correspondingly denied the Plaintiffs' request to preliminarily enjoin enforcement of the statutory restriction. *Id.*

4

## A.  Factual Background

### 1.  Relevant Statutory Framework

Under Georgia law, there are very few restrictions on the ability to purchase and carry firearms. Individuals may lawfully carry a loaded firearm in public—even without a license—if they satisfy the definition of a "lawful weapons carrier." *See* O.C.G. A. § 16-11-126. "Lawful weapons carrier" is defined in § 16-11-125.1(2.1) and includes, *inter alia*, individuals who are "licensed or eligible for a license pursuant to § 16-11-129 and who [are] not otherwise prohibited by law from possessing a weapon or long gun." O.C.G.A. § 16-11-125.1(2.1).

Subsection (b)(2) of § 16-11-129 sets forth circumstances in which an individual is ineligible to receive a weapons carry license. Of relevance here, it provides that "[n]o weapons carry license shall be issued to … [a]ny person younger than 21 years of age…." *See id*. at (b)(2)(A). An exception to this age requirement exists for those who have completed basic training in the armed forces of the United States and are actively serving or have been honorably discharged. *Id*. Such individuals may, if otherwise qualified, obtain a license if at least 18 years of age. *Id*.

There are also numerous circumstances in which 18-to-20-year-olds may possess a loaded handgun even if they are not

5

serving in the military. *See* O.C.G.A. § 16-11-126(a)–(f). They may, for instance, carry on their property, or inside their "home, motor vehicle, or place of business." *Id*. at § 16-11-126(a). A person under 21 with a valid hunting or fishing license may also carry a loaded handgun while hunting, fishing, or engaged in sport shooting. *Id*. at § 16-11-126(e)(1). And long guns may be carried in public by those not prohibited by law from possessing a handgun or long gun, including 18-to-20-year-olds. *Id*. at § 16-11-126(b). Additional exceptions from Georgia's licensing requirements for individuals employed in certain public offices are set forth in § 16-11-130.

Thus, under Georgia law, 18-to-20-year-olds who have not completed basic training are ineligible for a weapons carry license, but that simply means they are unable to lawfully carry a handgun in public, subject to exceptions noted above. *See* O.C.G.A. §§ 16-11-129(b)(2)(A), § 16-11-126(g). A person who carries a weapon, including a handgun, when not a "lawful weapons carrier" commits the offense of "unlawful carrying of a weapon," and a first offense of this provision is punishable as a misdemeanor. O.C.G.A. § 16-11-126(g).

## 2.  Plaintiffs' Allegations and Claims

Plaintiff Georgia Second Amendment, Inc. is a corporation that alleges its mission "is to foster the rights of its members to

6

keep and bear arms." Doc. 1, p. 1. Its members include individuals between the ages of 18 and 20 years old who are ineligible to obtain a weapons carry permit because they are under 21 and have not completed basic training in any branch of the military. *Id.*, p. 3. One such member is plaintiff Thomas Stephens. *Id.*, p. 2. Plaintiffs' complaint, filed via 42 U.S.C. § 1983, asserted a single Second Amendment claim alleging that Georgia's minimum age requirement for obtaining a weapons carry license and carrying a loaded handgun in public is unconstitutional on its face. *See generally, id*. Plaintiffs averred in the complaint that Stephens and other 18-to-20-year-old members of Georgia Second Amendment, Inc., desire to carry a handgun in public "in case of confrontation" but refrain from doing so because "they are in fear of arrest and prosecution for violating O.C.G.A. § 16-11-126(g)(1)." *Id.*, p. 3. They sought a declaration that § 16-11-126(g)(1) is unconstitutional, as well as preliminary and permanent injunctive relief against Governor Kemp, prohibiting him from enforcing the law to the extent it precludes plaintiff Stephens and other 18-to-20-year-old members from carrying a loaded handgun in public.[1]

---

[1] Plaintiffs also sought preliminary and permanent injunctive relief against defendant Michael Chastain, a probate court judge in Lumpkin County, precluding him from declining to issue weapons carry licenses to individuals under 21 years of age, as

And Plaintiffs sought costs and attorney's fees under 42
U.S.C. § 1988.

### B.  Proceedings Below

Along with the complaint, Plaintiffs filed a motion seeking to
preliminarily enjoin Governor Kemp from enforcing § 16-11-
126(g)(1) and Judge Chastain from enforcing § 16-11-129(b)(2)(A).
Governor Kemp and Judge Chastain opposed Plaintiffs' motion,
and they separately moved to dismiss the complaint against them.

The district court granted both motions to dismiss. It
assumed, without deciding, that the Second Amendment's plain
text covers the conduct at issue here. Doc. 23 at 11. And the court
held that "laws restricting 18-to-20-year-olds from obtaining [a
weapons carry license] and from carrying handguns in public are
'consistent with our Nation's historical tradition of firearm
regulation.'" *Id.* at 12 (citing *Bondi*, 61 F.4th at 1320, 1325-32).
The district court relied heavily on this Court's decision in *Bondi*
(since vacated for *en banc* review). *Bondi* involves a Second
Amendment challenge to a similar Florida statute, which

---

Georgia law (and, in particular, § 16-11-129(b)(2)(A)) requires
him to do. Doc. 1, p. 4; Doc. 2-1, p. 6. Judge Chastain is
represented by separate counsel.

generally prohibits the purchase of firearms by anyone under 21 years of age. *Bondi*, 61 F.4th at 1320.[2]

Based on *Bondi*, the district court held that Plaintiffs "could not show that they are substantially likely to succeed on the merits of their Second Amendment claim," and the district court denied Plaintiffs' motion for preliminary injunctive relief. Doc. 23, p. 7.

### C.   Standard of Review

This Court reviews *de novo* a district court's grant of a motion to dismiss for failure to state a claim. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). A district court's ruling on a motion for preliminary injunction is reviewed for abuse

---

[2] The issue the *en banc* Court will decide in *Bondi*—whether Florida's restriction violates the Second Amendment rights of 18-to-20-year-olds—is nearly identical to the issue on appeal here. *See NRA v. Bondi*, 21-12314, Doc. 88 (En Banc Briefing Notice, issued July 21, 2023). Briefing in the case is set to commence after the Supreme Court issues an opinion in *United States v. Rahimi*, No. 22-915, which involves a Second Amendment challenge to a federal prohibition on the possession of firearms by persons subject to a domestic violence restraining order. *Id.* Because this Court's *en banc* ruling in *Bondi* will undoubtedly inform, and most likely be decisive of, this case, it makes sense to hold this appeal in abeyance pending a ruling in *Bondi*. Governor Kemp thus filed a motion requesting this Court to do just that. The motion, filed on July 26, 2023, is fully briefed and pending.

of discretion. *Swain v. Junior*, 961 F.3d 1276, 1285 n.3 (11th Cir. 2020).

## SUMMARY OF ARGUMENT

With some exceptions, Georgia law requires individuals to be 21 years of age or older to lawfully carry a firearm in public. The district court correctly dismissed Plaintiffs' constitutional challenge to the statutory provisions which effect this age-based restriction (*see* O.C.G.A. §§ 16-11-126(g)(1) and 16-11-129(b)(2)(A)), and it properly denied their request to preliminarily enjoin them, because the restriction is consistent with the Nation's historical tradition of firearms regulation and, accordingly, with the Second Amendment.

Laws imposing restrictions on the purchase, transfer, possession, and use of firearms by "minors" under 21 years of age have been in existence for well over 150 years, with at least nineteen states and the District of Columbia having passed such laws by the close of the 1800s. And although not in place when the Bill of Rights was adopted in 1791, many of these laws were in place at or around the time of the passage of the Fourteenth Amendment. Plus, these laws are consistent with, and reflect, Founding Era and Reconstruction Era attitudes toward 18-to-20-year-olds, who, at both such points in history, were considered and

treated by law as minors or "infants" without legal autonomy, were subject to the direction and control of parents or guardians, and, importantly, lacked many rights of adults, including the right to serve on a jury and the right to vote.

Georgia's age-based restriction on carrying a firearm in public is constitutional. The district court's ruling should be affirmed.

## ARGUMENT

### I.    The district court correctly dismissed Plaintiffs' Second Amendment claim because Georgia's age-based restriction on public carry is constitutional.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment confers a private, individual right to keep and bear arms, the "central component" of which is a right to self-defense. 554 U.S. 570, 595, 599 (2008). Two years later, in *McDonald v. City of Chicago*, the Supreme Court held that the Fourteenth Amendment makes the Second Amendment applicable to the states. 561 U.S. 742, 750 (2010). And, more recently, in *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court made clear that the Second Amendment protects not only the right to keep a handgun in one's home for self-defense, but to carry a weapon in public for that purpose. 142 S. Ct. 2111 (2022).

*Bruen* also clarified the appropriate analytical framework for resolving Second Amendment cases and determining whether the Second Amendment protects conduct that a government seeks to restrict.[3] *Id*. at 2127. First, courts must ask whether the Second Amendment's "plain text" covers the conduct the state seeks to regulate. *Id*. at 2126. If it does, "the Constitution presumptively protects that conduct." *Id*. To rebut that presumption, the state must demonstrate that its regulation of the conduct "is consistent with this Nation's historical tradition of firearms regulation." *Id*. This often entails "reasoning by analogy"—analogizing a historical regulation with a "distinctly modern firearm regulation" to determine "whether the two regulations are 'relevantly similar.'" *Id*. at 2132. This approach is necessary because "[t]he regulatory challenges posed by firearms today are not always the same as

---

[3] In doing so, *Bruen* rejected the two-part approach to assessing Second Amendment claims that many lower courts, including the Eleventh Circuit, had been utilizing. *See, e.g., GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012). That approach involved asking first whether the Second Amendment protected the conduct the government sought to restrict. *Id*. And, if it did, courts then evaluated the law using means-end scrutiny. *Id*. The Supreme Court described the first step of that approach as "broadly consistent with *Heller*" but abrogated the second as "inconsistent with *Heller*'s historical approach." *Bruen,* 142 S. Ct. at 2127, 2129.

12

those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* Courts should look, according to *Bruen*, to the "how" and "why" of the regulations—i.e., "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133. *Bruen* thus made clear that a state, in order to meet its burden, need not identify a "historical twin" or a "dead ringer"; on the contrary, it need only "identify a well-established and representative historical analogue." *Id.*

Here, the district assumed without deciding that the "plain text" of the Second Amendment covers the conduct being regulated.[4] *See Bruen*, 142 S. Ct. at 2126. And it held that an age-based restriction that precludes most 18-to-20-year-olds from carrying handguns in public is consistent with the historical traditional of firearm regulation in this country and, thus, with the Second Amendment. That holding is correct.

Laws imposing age-based restrictions on the purchase, transfer, possession, and use of firearms have been in existence for

---

[4] In other words, it assumed that the individuals at issue (here, 18-to-20-year-olds) are "part of 'the people' whom the Second Amendment protects" (*id.* at 2131) and that the text of the amendment protects the proposed course of conduct (here, carrying a handgun in public for self-defense) (*id.* at 2126, 2134).

well over 150 years. As early as 1856, Alabama law prohibited anyone from providing "to any male minor" any "air gun or pistol," 1856 Ala. Acts 17, No. 26, § 1. A minor at the time was anyone under 21 years of age. *See Saltonstall v. Riley*, 28 Ala. 164, 172 (1856) (describing a "minor under the age of twenty-one years").[5] Tennessee similarly proscribed selling, loaning, or giving a pistol to any minor under 21 years of age, with the exception of "a gun for hunting."[6] 1856 Tenn. Acts 92, ch. 81, § 2. Kentucky did too, just a few years later, excepting only situations in which the transfer was by the parent or legal guardian of the minor. *See* 1859 Ky. Acts 245, § 32 (making it unlawful for anyone "other

---

[5] This was not just the case in Alabama. As discussed *infra*, prior to and well after ratification of the Second Amendment, "twenty-one [w]as the near universal age of majority." Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev. 55, 64 (2016). Individuals under 21 years of age were considered by law to be "infants" and "minors." *See, e.g.*, William Blackstone, 1 Commentaries on the Laws of England 463 (1st ed. 1765) ("So that full age in male or female, is twenty one years, which age is completed on the day preceding the anniversary of a person's birth; who till that time is an infant, and so styled in law."); *Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015) ("During the founding era, persons under 21 were considered minors or 'infants'.").

[6] Georgia law permits individuals under 21 to carry a gun "while hunting, fishing, or engaging in sport shooting." O.C.G.A. § 16-11-126(e).

than the guardian" to sell, give, or loan a pistol or other deadly
weapon to anyone under 21 years of age).

Over the next several decades, a time period encompassing
the adoption of the Fourteenth Amendment, numerous
jurisdictions enacted a flurry of similar laws across the country,
with at least another sixteen states and the District of Columbia
prohibiting the sale or transfer of firearms to minors under 21
years of age by the close of the 1800s (or, in a few instances,
permitting it only by, or with consent of, the minor's parent or
guardian). *See Nat'l Rifle Ass'n. v. Bureau of Alcohol, Tobacco,
Firearms and Explosives,* 700 F.3d 185, 202 (5th Cir. 2012),
*abrogated on other grounds*, *Bruen*, 142 S. Ct. at 2129–30 ("[B]y
the end of the 19th century, nineteen States and the District of
Columbia had enacted laws expressly restricting the ability of
persons under 21 to purchase or use particular firearms, or
restricting the ability of 'minors' to purchase or use particular
firearms while the state age of majority was set at 21.").[7]  One of

_____

[7] *See* 1875 Ind. Laws 59, ch. XL, § 1; 1876 Ga. Laws 112, No.
CXXVIII (O. No. 63) § 1; 1878 Miss. Laws 175, ch. 66, §§ 1-2;
*Rev. Stat. of the State of Missouri* 224, § 1274 (1879); 1881 Del.
Laws 987, ch. 548, § 1; 1881 Ill. Laws 73, § 2; 1882 Md. Laws
656, ch. 424, § 2; 1882 W. Va. Acts 421-22, ch. 135, § 1; 1883 Kan.
Sess. Laws 159, ch. CV, 1-2; 1883 Wis. Sess. Laws 290, ch. 329,
§§ 1-2; 1884 Iowa Acts And Resolutions 86, ch. 78, § 1; 1890 La.

those states was Georgia. *See* 1876 Ga. Laws 112, No. CXXVIII (O.

No. 63) § 1.[8] And several states passed laws prohibiting anyone

under 21 from possessing or carrying a firearm. *See, e.g.*, 1883

Kan. Sess. Laws 159, ch. CV, 1-2 ("Any minor who shall have in

his possession any pistol, revolver or toy pistol, by which

cartridges may be exploded, … or other dangerous weapon, shall

be deemed guilty of a misdemeanor[.]"); 1883 Wis. Sess. Laws 290,

---

Acts 39, No. 46, § 1; 1890 Wyo. Sess. Laws 140, § 97; *The Miscellaneous Documents of the Senate of the United States for the First Session of the Fifty-Second Congress 1891-92*, at 288, § 5 (1892); 1893 N.C. Pub. L. & Res. 468, ch. 514, §1; 1895 Neb. Laws 237-38, *Laws of Nebraska Relating to the City of Lincoln*, Art. XXVI, §§ 2, 5; 1897 Tex. Gen. Laws 221-22, ch. 155, § 1.

[8] The Georgia law made it a misdemeanor "for any person or persons knowingly to sell, give, lend or furnish any minor or minors any pistol dirk, bowie knife or sword cane," except when such weapons were furnished "under circumstances justifying their use in defending life, limb or property." *Id*. Relying on the exception language, Plaintiffs contend that the law actually permitted the furnishing of a firearm to a minor under 21 for carrying in public generally, in the event the minor needed it for self-defense. (App. Br. at 17). But they provide no support for their ambitious reading of the statute, and their reading of the exception would largely swallow the rule. Notably, current Georgia law provides that the defense of self or others is an absolute defense to a violation of the general requirement that an individual be licensed or eligible for a license to carry a loaded handgun in public. O.C.G.A. § 16-11-138. Yet Plaintiffs do not argue that this provision permits them to carry in public generally.

ch. 329, §§ 1-2 ("It shall be unlawful for any minor, within this
state, to go armed with any pistol or revolver, and it shall be the
duty of all sheriffs, constables, or other public police officers, to
take from any minor any pistol or revolver, found in his
possession."); 1885 Nev. Stat. 51 § 1 ("Every person under the age
of twenty-one (21) years who shall wear or carry any dirk, pistol,
… or other dangerous or deadly weapon concealed upon his
person, shall be deemed guilty of a misdemeanor.").

To be sure, the majority of the laws cited above regulated the
transfer of firearms to minors; most were not styled as a
prohibition on the carrying of a firearm in public by minors. But a
historical regulation need only be analogous to show that a
modern regulation is consistent with the Second Amendment.
*Bruen*, 142 S. Ct. at 2133. It need not be a "historical twin" or
"dead ringer." *Id*. And a historical regulation is sufficiently
analogous if it is "relevantly similar"—i.e., comparable in its
burden and justification—to the modern regulation. *Id*.

That is the case here. Georgia's law imposes a comparable
burden on the right of armed self-defense as the historical
precursors discussed above. *Id*. Indeed, historical laws which
prohibited even *providing* firearms to minors arguably imposed a
greater burden than the modern counterpart at issue here, which

17

regulates only the public carrying of handguns by those under 21 (and otherwise permits such individuals to own and possess guns, and to carry them in various locations). And the burdens of the regulations are "comparably justified"; both are clearly aimed at enhancing public safety. At a minimum, the litany of historical regulations prohibiting the transfer of firearms to minors demonstrates a historical understanding that the government could place more significant restrictions on those under 21 when it comes to the right to bear arms. And it would make little sense to conclude that the Reconstruction Era public understood and accepted limits on the ability of those under 21 even to *access* a firearm yet would not accept a limitation on the ability of minors to carry loaded firearms in public.

Plaintiffs nonetheless contend that these historical regulations "are of no value" in interpreting the Second Amendment because they were passed in the mid- and late-1800's, well after ratification of the amendment. Br. at 18. And they argue that "giving any weight" to them (as the district court did) "is in direct conflict with *Bruen*." *Id.* at 16. It is true that these early laws do not date back to 1791. And it is also true that Founding Era laws provide considerable insight into the Second Amendment's meaning. *See Bruen*, 142 S. Ct. at 2137. But the

Supreme Court has made clear that "evidence of 'how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century' represent[s] a 'critical tool of constitutional interpretation.'" *Id.* at 2136 (quoting *Heller*, 554 U.S. at 605). Indeed, *Bruen* recognizes an "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868" when defining the scope of the Second Amendment right against state governments. *Id.* at 2138. And the Supreme Court engaged in an extensive review of nineteenth-century evidence in both *Heller* and *Bruen*. *See Heller*, 554 U.S. at 605-19; *Bruen*, 142 S. Ct. at 2145-56.

In short, there is no merit to Plaintiffs' contention that reliance on nineteenth century analogues was error. And the related notion that only modern regulations which mirror those in existence in or around 1791 pass constitutional muster, *see* Br. at 18, also lacks merit. *See United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) ("[W]e do take from *Heller* the message that exclusions need not mirror limits that were on the books in 1791."); *cf. McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 373 (1995) (Scalia, J., dissenting) ("Quite obviously, not every

19

restriction upon expression that did not exist in 1791 or 1868 is ipso facto unconstitutional.").

Moreover, nineteenth-century laws prohibiting firearm possession and use by anyone under 21 are in accord with Founding Era and Reconstruction Era attitudes towards minors, as well as their legal status. In both 1791 and 1868, 18-to-20-year-olds had the legal and societal status of "infants" or "minors" subject to the direction and control of parents or guardians. *See Horsley*, 808 F.3d at 1130; *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 834 (2011) (Thomas, J., dissenting) ("history clearly shows a founding generation that believed parents to have complete authority over their minor children"). And the line between "adults" and "minors" remained at 21 until the latter half of the twentieth century. *See Nat'l Rifle Ass'n*, 700 F.3d at 201 ("[I]t was not until the 1970s that States enacted legislation to lower the age of majority to 18."). It is perhaps not surprising, then, that legislatures in both the eighteenth and nineteenth centuries did not extend a variety of important rights to 18-to-20-year-olds, including the right to serve on a jury and, perhaps most notably, the right to vote. *See Brown*, 564 U.S. at 834 (observing that early laws "imposed age limits on all manner of activities that required judgment and reason" and that minors under 21

20

"could not vote, could not serve on juries"). Laws passed in the 1800s which prohibited or restricted the access of 18-to-20-year-olds to firearms (including those that required parental approval for access) reflected, and were entirely consistent with, this historical tradition. And surely society's views on, and the rights of, "minors" under 21 in the Founding and Reconstruction Eras—not modern ideas and rights of a group now referred to as "young adults" (but who were *not* adults in either relevant historical period)—are what is relevant here. *See Bruen*, 142 S. Ct. at 2136 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.").

In *Bruen*, the Court left open the question of what time period should be primarily relied upon when determining if a modern regulation has a historical analogue, because "the public understanding of the right to keep and bear arms in both 1791 and 1868 was, for all relevant purposes, the same with respect to public carry." *Id.* at 2138. So too with respect to the public understanding of where the line should be drawn between adults and minors—in other words, where the age of political and social maturity should be set. That age was 21, not 18, in both 1791 and 1868. And this is significant, because it is against this historical backdrop that the Second Amendment must be read. This Nation's

historical tradition demonstrates that a restriction on the ability of 18-to-20-year-olds to carry a firearm in public is consistent with the Founders' understanding of the rights of such individuals within the "political community." *See Heller*, 554 U.S. at 580 (describing "the people" in the Second Amendment as "members of the political community"). The district court correctly held that the challenged regulation is in accord with the Second Amendment.

## II. The district court did not err in refusing to grant Plaintiffs' request for preliminary injunctive relief.

A party seeking a preliminary injunction must show: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the nonmovant; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284 (11th Cir. 2020). A preliminary injunction is an "extraordinary and drastic remedy," and it should not be granted unless the movant "clearly establishes" all four prerequisites. *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir. 2016). Moreover, "preliminary injunctions of legislative enactments—because they interfere with

the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly." *Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

Plaintiffs failed to demonstrate a substantial likelihood of success on the merits because, as shown, the challenged regulation does not violate the Second Amendment. The district court correctly denied the motion on this basis, and this Court should affirm. But the Plaintiffs also failed to establish the equities necessary for the "extraordinary and drastic" remedy of a preliminary injunction, *Wreal*, 840 F.3d at 1247, and this Court could affirm the district court's denial of an injunction for that additional reason.

As to irreparable harm, Plaintiffs' own delay in filing suit belies any notion that they have suffered irreparable harm. "[D]elay … militates against a finding of irreparable harm." *Wreal*, 840 F.3d at 1248. The "very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* So a "failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *Id.* Yet Georgia's relevant laws have been on the books for decades

(if not centuries). Plaintiffs, and in particular Georgia Second Amendment, Inc., did not even hint at the reason for not filing suit sooner, much less why they need a preliminary injunction when they were in no apparent hurry to file suit in the first place.

The other equities also weigh against Plaintiffs. The State's interests here, as well as the public interest, weigh against an injunction. *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("These factors merge when the Government is the opposing party."). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). Plaintiffs contended below that an injunction would be in the public interest because the public has an interest in the "preservation of the rights guaranteed to Plaintiffs by the Constitution." (Doc. 2-1, p. 6). But that is a circular argument that assumes their ultimate success on the merits—plainly, the public has an interest in seeing its own statutes enforced. Regardless of whether this Court affirms the district court's dismissal of the case, it should affirm denial of the preliminary injunction.

## CONCLUSION

For the reasons set out above, this Court should affirm the judgment of the court below.

Respectfully submitted.

/s/ *Deborah Nolan Gore*
Christopher M. Carr
  *Attorney General of Georgia*
Beth Burton
  *Deputy Attorney General*
Tina M. Piper
  *Senior Asst. Attorney General*
Deborah Nolan Gore
  *Senior Asst. Attorney General*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3289
dgore@law.ga.gov
*Counsel for Appellee Governor*
*Brian Kemp*

25

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,449 words as counted by the word-processing system used to prepare the document.

/s/ *Deborah Nolan Gore*
Deborah Nolan Gore

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.


<u>/s/ *Deborah Nolan Gore*</u>
Deborah Nolan Gore